The Heller Company v. Commissioner.
Heller Co. v. Commissioner
Docket No. 108254.
United States Tax Court
1942 Tax Ct. Memo LEXIS 21; 1 T.C.M. (CCH) 256; T.C.M. (RIA) 42668; 12/21/1942
*21 Fenelon Boesche, Esq., Bradford H. Williams, Esq., Roscoe E. Harper, Esq., and Richard P. Ryan, Esq., for the petitioner. E. G. Sievers, Esq., and L. R. Vanburg, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: The respondent has determined income tax deficiencies of $2,571.49 for 1938 and $1,515.33 for 1939. The only question in issue is whether the petitioner is entitled to loss deductions claimed on account of a number of oil and gas royalties which it determined to be worthless and charged off in its returns for the respective years. Some of the facts have been stipulated. [The Facts] Petitioner is a corporation with its principal office at Tulsa, Oklahoma. It filed its income tax returns for 1938 and 1939 with the collector of internal revenue for the district of Oklahoma. Its returns were all made on the accrual basis. Petitioner is engaged in the business of purchasing oil and gas royalties for investment purposes. Since its organization in 1932 it has purchased a total of 235 royalties, all in the State of Oklahoma. During that period it sold only two of such royalties. It has been petitioner's practice since it first began operations to charge off *22 in each year and deduct in its income tax returns the cost or adjusted basis of the royalty interests which, in the best judgment of its officers, had become worthless during the taxable year. In 1938 and 1939 petitioner charged off a total of 57 of such royalties. Those charged off in 1938 had an aggregate cost or adjusted basis of $21,197.10 of which amount $18,733.91 was deducted in the return for that year. The aggregate cost or adjusted basis of those charged off in 1939 was $10,151.78, all but $49.50 of which, or $10,102.28, was deducted in the 1939 return. The full amounts charged off in both years are now claimed as deductions in those years. Petitioner's determination of worthlessness of the royalties in question in almost every instance was made after one or more dry holes had been drilled during the year down to the lowest level of proven production in that area, which, in the opinion of the operator engaged in the drilling and others experienced in the business, condemned petitioner's royalties as worthless. It is stipulated that the sedimentary series or beds below the formations tested by the dry holes in the area of petitioner's royalties have never been tested. *23 Maps showing the exact location of each of such royalties in relation both to the dry holes and the producing wells, if any, in the area, were put in evidence as part of the stipulation of facts in this proceeding. Petitioner's vice-president and treasurer, Harvey A. Heller, who has been in active charge of petitioner since its organization, gave oral testimony in explanation of the method followed in charging off the royalties, particularly in relation to the data shown in the maps and other stipulated facts. From the evidence as a whole we are convinced that petitioner's determination of worthlessness and charge-off of the royalty interests involved, both in 1938 and 1939, was based on sound business judgment. The evidence is that after dry holes had been drilled the operators in each instance abandoned the premises usually forfeiting their lease, if any, and attempted no further development in that immediate locality. Experienced and reputable operators ordinarily are unwilling to bear the large cost of drilling an exploratory well near property which has been tested unfavorably down to the lowest known producing formation in that area. A royalty interest on which a dry hole has *24 been drilled or one situated in an unfavorable geological relationship to such a dry hole loses its sale value and is seldom sold or offered for sale until and unless some further development is undertaken nearby. In a few instances there were such later developments on or near some of the royalties charged off by the petitioner. On two of the royalties charged off in 1938 there has since been a small amount of production. One of those royalties was located in section 28, Township 17 North, Range 5 East, Lincoln County, Oklahoma. It was acquired by petitioner in 1933. Petitioner's royalty covered the northeast and southeast quarter sections of sections of section 28. In 1936 the lessee completed a well directly between these quarter sections which produced a small amount of oil and gas from the Wilcox sand. In September, 1938, the well stopped producing and was abandoned. Petitioner charged off the royalties in 1939. In September, 1940, however, another lessee drilled a well in the extreme southeast corner of section 28 and on petitioner's royalty which showed water in the Wilcox sand. It was plugged back to the Viola lime, however, where it produced, and still produces, a small quantity *25 of gas. Petitioner still owns this royalty and receives $5 a month revenue therefrom. Notwithstanding the subsequent development and small amount of production we think that petitioner was justified in charging off the royalties in 1938 when the producing well failed and the premises were abandoned by the lessee operator. The other royalty on which there was subsequent production (described in the stipulation as No. 91, Exhibit 4) was located in section 35, Township 10 North, Range 3 East, Pottawatomie County, Oklahoma. Petitioner charged off the royalty in 1938 when a dry hole was drilled to the Wilcox sand in the northeast corner of the southeast quarter of section 2 which adjoined section 35 on the south. The dry hole was approximately one-half mile directly south of petitioner's royalty No. 91. At that time there were no producing wells or other dry holes within that area. In 1941 a small pool was discovered just to the east and southeast of petitioner's royalty on which twelve producing, wells were drilled in that year. One of such wells was located on the southeast corner of petitioner's royalty. After receiving about $1,000 from production from that well petitioner in 1941 *26 sold its royalty for an undisclosed amount. It reported the amount received in its return for that year. We think that petitioner was entitled to claim a loss on his royalty interest in 1938 when the dry hole was completed nearby and the operator abandoned the premises. The reasonableness of the method which petitioner followed in charging off royalty losses is demonstrated by the fact that of the 174 separate royalties charged off over the period 1934 to 1940 inclusive, there has been subsequent production on only ten. The amount charged off in respect of those ten royalties was less than two percent of the total amount charged off. The small amounts of income received on the ten royalty interests referred to have been reported as taxable income in the year of receipt. [Opinion] The respondent takes the position in this proceeding, similar to that taken in , promulgated November 18, 1942, and , promulgated December 9, 1942, that an oil and gas royalty can not be considered worthless "until it has been demonstrated or proved that all reasonable possibilities of *27 obtaining oil or gas production have been exhausted in the known producing horizons and all sedimentary beds below even though untested which can be reached under the present-day standards of drilling" and that "in all localities where the whole geologic column of sedimentary rocks is within reach of the drill under present-day standards of drilling, respondent insists that, in order to prove the lower beds to be unsuitable for the accumulation of oil or gas, at least some of the test wells relied upon to establish the worthlessness of the royalty interest shall have penetrated and reached the bottom of the sedimentary series, that is, to the granite or underlying base formation generally recognized as unsuitable for a source or reservoir for oil or gas." We held in , and , that in determining the worthlessness of oil and gas royalties for the purpose of the loss provisions of the statute the same tests should be applied as with other types of property; that a royalty interest becomes worthless, and is deductible as a loss, upon the happening of some event which results in the *28 loss of sale value in the ordinary channels of trade and which would cause a reasonably prudent and informed business man to eliminate it from the asset side of his balance sheet. The evidence as to the worthlessness of the royalties involved in this proceeding is substantially the same as that on which loss deductions were allowed on account of the worthlessness of oil and gas royalties in the C. C. Harmon and Harvey A. Heller cases. We find as a fact on the evidence in this proceeding that all of the royalties which the petitioner charged off as worthless in 1937 and 1938 became worthless in those years. Petitioner is therefore entitled to the deduction of the amounts claimed, $21,197.10 in 1938 and $10,151.76 in 1939, in its returns for those years. Decision will be entered under Rule 50.